T. J. SHEA, Appellant, v. EDWIN CUTLER.

J. P. STEELS, Appellant, v. EDWIN CUTLER.

**Contracts:** GENUINENESS OF SIGNATURE: ALTERATION: EVIDENCE: ACCOUNTING. In this action for an accounting and judgment for a certain percent' of the profits of business done by defendant under an alleged written contract, in which plaintiff was to work for defendant and recover such profits as part compensation for his services, the evidence is held insufficient to show that the contract relied upon was executed by defendant; and insufficient to show that certain erasures and interlineations in the copy of the claimed contract held by plaintiff and relied upon by him were made by defendant or with his knowledge and consent.

**Same:** ORAL EVIDENCE: ADMISSIBILITY. In this action one plaintiff seeks to recover for services performed under a claimed written

substitute for a prior written contract voluntarily abandoned by him, but conceded as binding if it had been carried out. Another plaintiff is attempting to recover on a written contract which by material alterations made by him was rendered invalid, if in fact they were executed so as to be binding. *Held,* that neither plaintiff can rely upon oral conversations preceding and referring to the attempted execution of the written contract, in the absence of a showing of fraud or imposition on the part of the defendant resulting in the failure to execute a binding written agreement.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

THURSDAY, MAY 12, 1910.

THESE are two actions in equity, tried together in the lower court, in each of which plaintiff asked an accounting by defendant as to the business done by him as contractor and jobber of steam, water, and gas fittings, plumbing, sewer work, and pipe covering in Des Moines, in the one case from September 1, 1904, to January 1, 1906, and in the second case from January 2, 1905, to January 1, 1906, and for judgment in each case against the defendant for two percent of the profits of his business during the period specified under an alleged contract, by which plaintiff in each case was to work for defendant during the specified period at a fixed rate of compensation, and receive in addition thereto said two percent on the profits of his business. In the Steele case plaintiff also asked reformation of the written contract. Defendant in each case denied the execution of the contract relied upon, and by stipulation of the parties evidence was introduced on the question whether the contracts sued upon were in fact executed; evidence introduced in either case to be considered in the other so far as applicable. By further stipulation it was agreed that, before evidence as to the accounting was introduced, the trial court should

make a finding in each case whether plaintiff had established such contract as to entitle him to have an accounting of defendant's business. After hearing the evidence the court found that in the Shea case the defendant did not execute the contract relied upon, and "in the Steele case that the contract relied upon by plaintiff bearing the defendant's signature had been materially altered without the knowledge or assent of defendant, and was therefore invalid. Thereupon each plaintiff filed an amendment to his petition, in which he alleged an oral contract substantially in the terms embodied in his alleged written contract, which oral contract had not been reduced to writing, and asked the same relief as had been asked on the alleged contract in writing. The defendant in each case answered the amended petition, in substance denying the allegations thereof, and the court entered a decree denying plaintiff in each case any relief, and entered judgment against plaintiff in each case for costs. From these findings and judgments the plaintiff in each case appeals.— *Affirmed.*

*Read & Read,* for appellants.

*Blake & Blake,* for appellee.

McCLAIN, J.—The only direct testimony as to the transactions between the parties was that of the defendant and of these plaintiffs, and they are in substantial agreement to the effect that during the fall of 1904 there were conversations between the defendant and both Shea and Steele with reference to their continuing in the employment of defendant in his general business of plumbing and steam and gas fitting during the year 1905, at a fixed rate of compensation, with the additional inducement of some percentage on the profits of the business. Defendant testified that two percent of the profits of the business,

after deducting losses by bad accounts, etc., was to be divided equally between the plaintiffs. On the other hand, plaintiffs substantially agreed in their testimony that each was to have two percent of the profits in the entire business, and that defendant represented that on the amount of business which he had been doing this would amount to at least $600 for each of them. Each of the witnesses testified as to efforts made towards reducing this arrangement to writing by means of two separate contracts; defendant's account being that in the latter part of December, 1904, at the suggestion of plaintiffs, he wrote out two contracts, one for each of them, with duplicates, signed the four, and delivered one each to Shea and Steele, that Shea signed his contract and returned it to defendant, and that Steele retained his, expressing the desire to consider the matter further. There was introduced in evidence an instrument in defendant's handwriting on one of his letter heads, purporting to be such a contract as that above described, dated January 2, 1905, and signed by both defendant and Shea. But Shea's action is based on another instrument written by himself, purporting to be dated September 1, 1904, signed by himself, and purporting to have the signature of defendant attached thereto, which instrument differs in material respects from the one written by defendant and confessedly signed by both of them. Shea's explanation as to these two instruments is that, some days after he had signed the instrument drawn by defendant, he expressed to defendant his dissatisfaction with its terms, on the ground that they were not in accordance with the previous negotiations, whereupon defendant told him to draw such a contract as he wanted, and defendant would sign it, whereupon Shea wrote out at defendant's desk, on one of his letter heads, the contract on which he sues, and handed it to defendant, who after casually inspecting it affixed his signature thereto and returned it to Shea. As between

Shea and defendant the principal controversy is as to the genuineness of defendant's signature to this alleged second contract, the execution of which defendant unequivocally denies in his testimony.

The trial court had before it not only the first contract between Shea and defendant with defendant's genuine signature thereto, but also the instrument delivered to Steele with defendant's genuine signature, and a large number of bank checks bearing defendant's signature, conceded to be genuine. Expert witnesses as to handwriting, after examining the signatures conceded to be genuine, differed in opinion as to whether the alleged signature of defendant to the contract drawn by Shea was genuine. As we read the testimony of these witnesses we are inclined to the conclusion that those for the defendant denying the genuineness of the signature are entitled to greater credence. Those testifying for the plaintiff admit that the signature in question is quite unlike the other signatures of the defendant, and their explanations as to how they reach the conclusion that it is that of the same person who wrote the signatures conceded to be genuine are far from persuasive. But as the instruments have been transmitted to us for examination, we are inclined to give greater weight to the appearance of these signatures than to the testimony of the experts. It is to us perfectly plain that if the signatures of defendant conceded to be genuine represent his ordinary and natural method of signing his name, then the signature in question is not his, unless it was written in an assumed or unnatural manner. Counsel for plaintiffs practically concede that the signature in question does not appear to be that of the same person who wrote the signatures conceded to be genuine, but they attempt to account for the discrepancy by the claim that defendant wrote his name in an unnatural and unusual way, with the purpose of afterward

1. CONTRACTS: genuineness of signature: alteration: evidence: accounting.

denying the execution of the contract. As defendant already had a contract signed by Shea, it does not seem reasonable to suppose that, while the occasion for having a valid contract existed, he should have conceived the purpose of pretending to execute a contract which he might afterwards deny. There is nothing in the evidence to support this theory, unless it be a statement of defendant's stenographer as a witness that during the latter part of the year 1905 defendant said to her that plaintiffs might think they had contracts with him, but they would find out that they were mistaken. This testimony is not very persuasive, for the same witness testified that Steele told her in the fall of 1905 that "Cutler did not know that he (Steele) was going to bring a contract and make him hold to it, but he was when the time came."

We reach the conclusion, which was that reached by the trial court, that there is not sufficient evidence to support Shea's claim that the contract in his handwriting was signed by defendant. Some of the circumstances supporting this conclusion are: First, that the instrument written by him is antedated September 1st, and Shea does not pretend that there was any conversation between him and defendant with reference to this very material change, which would give him two percent on the business for practically three months preceding the execution of the contract, which both of them had already signed; and, second, that during his subsequent employment with defendant he constantly received compensation for extra hours' work beyond the $4 per day stipulated in the contract, although one of the stipulations in the contract which they had both signed was that Shea must render good and faithful services to the best of his ability, and "must be willing to be at store to help check out and in the men, and help take stock account, and in other work pertaining to the store to be done after work hours." Shea testified that he had rendered such services to defendant

before and after the usual hours for work, but claimed that the extra pay he had received was for working after hours and on Sundays out of the shop, and that he received no extra pay for the additional services he was to render under the contract in carrying on the general business. A further discrepancy between the contract which both signed, and the one on which plaintiff relies, is that the former provides for an allowance to Shea of two percent of the gross earnings of the plumbing business of defendant, while the contract written by Shea specifies this additional compensation as two percent of all business done by the defendant. As to this, Shea's testimony was that he understood the term "plumbing business" to include all of defendant's business, although he was in fact only a plumber, and under the rules of the unions, to one of which he belonged, was not allowed to do steam or gas fitting, or other kinds of work within the scope of defendant's business than that of plumbing. Shea did not testify that he objected specifically to defendant that the contract which they had signed was not in accordance with their agreement in any of these particular respects, but only that in some ways not pointed out such contract did not correspond to their agreement. It does not seem reasonable that defendant would have agreed, without discussion or protest, to these material modifications of a contract already fully executed, unless, as already suggested, he had at that time formed a purpose of pretending to affix to the contract written by Shea a signature which he might afterwards deny, and the circumstances lend no color whatever to any such purpose on his part in voluntarily writing his name at once and without objection to a writing materially different from the instrument for which it was proposed as a substitute. There is no other testimony than that of Shea's to the actual affixing of defendant's signature to the contract on which Shea has sued; for, while both Shea and Steele testify to the cir-

cumstances, Steele only says that defendant signed the paper which Shea presented to him without pretending to identify this contract as the one which defendant thus signed. We are satisfied on the whole record that Shea has failed to prove the execution by defendant of the contract on which he sues.

As to the contract relied upon by Steele, it is sufficient to say that it shows several erasures and interlineations which do not appear in the duplicate which defendant retained. The only question is whether these erasures and interlineations were made by the defendant or with his knowledge and consent, and we think on this question Steele has not sustained his burden of proof. We have in the record the testimony of an attorney to whom Steele presented his copy of this contract for the purpose of consulting him as to its meaning and effect, and the witness testified that it did not then show the erasures and interlineations complained of. Steele did not testify that after the contract was delivered to and taken away by him he had any further negotiations with defendant as to the making of changes, nor that after he himself signed this contract it was presented to the defendant and acquiesced in by him as the contract between them. Indeed, Steele does not testify that he ever advised defendant that he had signed the contract after having retained it for consideration. It is true that in one portion of his testimony he said that he signed it after these erasures and interlineations had been made by defendant, but this statement seems to be inconsistent with his other statement as to what took place with reference to the execution of this contract. We reach the conclusion therefore that Steele is not entitled to recover on the contract on which he sues, and this conclusion makes it unnecessary to consider the question whether he is entitled to have the contract reformed so as to show that his two percent should be

computed on the entire business, and not solely on the plumbing business.

There is not enough evidence in the record to justify the granting of relief to either of plaintiffs on an oral contract which through mistake or inadvertence was not reduced to writing. The conversations, as stated by all the witnesses, contemplated written contracts. There was unquestionably some attempt to execute written contracts. If written contracts binding on the parties were not executed, unless the failure of execution resulted from some fraud or imposition on the part of defendant, plaintiffs can not recover. No such fraud or imposition appears. Shea voluntarily abandoned a written contract which was confessedly binding if it had been carried out, and now attempts to recover on a written substitute for such contract. Steele attempts to recover on a contract which he has rendered invalid by material alterations, if in fact it was ever executed on his part so as to become binding on him. We can see no ground for allowing either of these parties to now rely upon oral conversations preceding and having reference to the attempt to execute written contracts.

*2. SAME: oral evidence: admissibility.*

If we should concede good faith to plaintiffs, there is nothing in the case to show any imposition practiced upon them. Shea has received payment for all his time, and for much extra time at the rate of $4 per day, although, as he himself testified, the usual rate of compensation for plumbers was $3.75 per day. And Steele, who was qualified only as a bookkeeper, has received pay at the same rate which he was previously receiving from defendant for the same kind and amount of work.

On the whole case, we are satisfied that the decree and judgment of the trial court in each was right, and it is *affirmed*.